**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**RONNIE MICHEAL LEE**                                                              **PLAINTIFF**

**V.**                              **CIVIL ACTION NO.  3:14CV668 HTW-LRA**

**CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY**           **DEFENDANT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Ronnie Lee appeals the final decision denying his applications for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

In March 2012, Plaintiff filed applications for SSI and DIB alleging a disability onset date of December 29, 2011, due to high blood pressure/hypertension, diabetes, high cholesterol, dyslipidemia, heart problems, coronary artery bypass surgery, and acute chest pain. He was born on June 9, 1964. He has an eighth grade education with past relevant work experience as a gas welder, truck driver, and delivery driver. Following agency denials of his application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of the Social

Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ found that he had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's history of coronary artery disease, status post sternotomy with one vessel bypass grafting of the left anterior descending coronary artery; mild degenerative spurring of the left hip without acute bony abnormality; and new onset of mild carpal tunnel syndrome were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except that:

> he must avoid concentrated exposure to extreme heat and cold; no hazards, machinery, or heights; occasionally balance, stoop, kneel, crouch, and crawl; no climbing of ladders, ropes, or scaffolds; frequent but not constant bilateral gross manipulation and fingering; occasional left lower extremity pedal/push/pull operations.[2]

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 9, p. 61.

Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a ticket-taker, ticket-seller, and fast-food worker.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to find all of his impairments were severe at step two, and failed to include all of his impairments in his residual functional capacity assessment. As a result, he argues the ALJ failed to sustain his burden at step five.

Plaintiff initially alleged disability due to high blood pressure/hypertension, diabetes, high cholesterol, dyslipidemia, heart problems, coronary artery bypass surgery, and acute chest pain.  At the administrative hearing, he alleged having also developed constant hip pain due to degenerative spurring in his hips, and carpal tunnel syndrome.  Despite undergoing a successful coronary artery bypass grafting in 2012, Plaintiff testified that he experiences shortness of breath when he walks and chest pains three to four times a day depending on his activity; he also cannot lift more than 10 pounds because it strains his incision.  He testified that he is 5'11 tall and weighs 246 pounds.  He attributes his blurred vision, toenail loss, numbness in his arms and legs, loss of circulation in his feet, and fatigue to his diabetes.  Additionally, he has hip pain when he lies on either side at night and when he walks.  He estimates that he can walk only 30 feet, and stand and sit for only 30-45 minutes before his hips and thighs become numb.  He also testified that his blood pressure medication causes headaches and he has to sit for a few minutes after taking his insulin.[3]

Based on the evidence of record, the ALJ concluded that Plaintiff's diabetes, hypertension, and obesity were not medically severe impairments.  Plaintiff asserts this was error because although he attributed his pain and shortness of breath to his heart condition and medication, these symptoms could also be reasonably caused by his diabetes, hypertension, and obesity.  He argues that the ALJ merely "picks and chooses"

---

[3] ECF No. 9, pp. 86-132.

4

only the evidence which supports a non-severity finding. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The undersigned does not so read the ALJ's decision. The ALJ's severity analysis acknowledges contrary evidence but reasonably concludes that Plaintiff's blood pressure, obesity, and diabetes would not affect his ability to work. Substantial evidence supports this finding.

Plaintiff asserts that his impairments deemed non-severe were well-documented, medically determinable impairments, and despite citing *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985), the ALJ applied the wrong legal standard in finding they caused "no more than minimal functional limitations or restrictions."[4] *Stone* holds that an impairment is not severe "'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)). *See also Brunson v. Astrue*, 387 F.App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101) (unpublished). Plaintiff argues that unlike the standard applied by the ALJ, *Stone* allows for no interference with the individual's ability to work.

Even if the ALJ erred, Plaintiff fails to show how the error prejudiced his claim. While the evidence confirms Plaintiff's diagnoses for each of these conditions, the diagnosis of an impairment alone is insufficient. *Hames v. Heckler*, 707 F.2d 162, 165

---

[4]ECF No. 9, p. 60; ECF No. 10, p. 13.

(5th Cir. 1983). As further discussed herein, no treating or examining physician has ever imposed work restrictions related to Plaintiff's non-severe impairments, and nothing of record suggests they cause limitations greater than those found by the ALJ.

With respect to Plaintiff's diabetes and hypertension, the ALJ cited medical reports showing both conditions were effectively managed with medication and treatment, with no resulting complications that would interfere with his ability to work, or evidence of end-organ damage. Although Plaintiff argues that it was error for the ALJ to consider whether these conditions resulted in end-organ damage, the absence of end-organ damage was one of several factors considered. *Reyes v. Sullivan*, 915 F.2d 151 (5th Cir. 1990).

Treatment records from Plaintiff's endocrinologist, for example, reveal that with recommended exercise and weight loss, his Type 2 diabetes was under "acceptable" control in March 2012. He was directed by his endocrinologist to follow up in three months, but as noted by the ALJ, he failed to do so, undermining his allegations of debilitating symptoms. *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms). Medical records show that he had an elevated glucose level when he saw his primary physician in April 2012, but this was attributed to the fact that he was out of his medication. He also complained of numbness and tingling in his hands to his primary care physician in March 2013, but the symptoms were attributed to carpal tunnel syndrome, not his diabetic condition. A "medical condition that can reasonably be

remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Further, in assessing the credibility of Plaintiff's diabetic complaints, the ALJ noted that there was no evidence of diabetic neuropathy, sensory disturbance or loss, diabetic ulcers, significant skin deterioration, or lower extremity peripheral vascular disease. Nor did the evidence establish that his fatigue or eyesight changes were due to his diabetes. There was "no evidence of diabetic retinopathy, glaucoma, cataracts, or other eye pathology." Plaintiff simply needed eyeglasses which corrected the problem.[5]

With respect to Plaintiff's hypertension, the ALJ cited medical evidence showing Plaintiff's blood pressure was 128/88 in February 2013; 154/94 in March 2012, and 147/94 in March 2013. The ALJ acknowledged that while Plaintiff's blood pressure was not consistently well controlled, there was no evidence of any complications associated with hypertension. Plaintiff testified that his blood pressure medication causes headaches, but he did not report any side effects to his physicians. To the contrary, he denied experiencing medication side effects, vision problems, and headaches. In addition, no physician has ever imposed work restrictions based on Plaintiff's hypertension. *See Flynn v. Heckler*, 768 F.2d 1273, 1274-75 (11th Cir. 1985) (holding ALJ erred in finding claimant's hypertension was not severe where claimant's physicians

---

[5]ECF No. 9, pp. 63, 404-413, 486-529.

warned that "[s]he has good reason to be fearful that her [past relevant] work will cause her blood pressure to elevate again and may possibly cause stroke or heart attacks" ).[6]

In terms of Plaintiff's obesity, the ALJ did not offer an exhaustive analysis. He observed that Plaintiff's weight fluctuated between 256-271 pounds, and noted that while he was obese according to Social Security Ruling 02-1p, there was no evidence that his obesity causes more than minimal functional limitations. Plaintiff cites no evidence to the contrary on appeal. SSR 02-1p provides that obesity can cause physical functional limitations with regard to sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, manipulating, as well as the ability to tolerate extreme heat, humidity, or hazards. SSR 02-1P, 2002 WL 34686281, *6 (Sept. 12, 2012). The ALJ's residual functional capacity assessment limits Plaintiff to light work with reduced postural, environmental, manipulative and exertional limitations. Plaintiff does not identify any specific obesity-causing limitation that the ALJ failed to account for in his residual functional capacity assessment.[7]

Lastly, Plaintiff criticizes the ALJ for failing to address degenerative spurring in his right hip at step two, while simultaneously finding that his degenerative spurring in his left hip was medically severe. A reading of the ALJ's decision suggests this was an oversight given that medical records show only left hip complaints. X-rays of Plaintiff's hips revealed marginal and "degenerative spurring along the lateral margin of *both*

---

[6]ECF No. 9, pp. 404-413, 486-529.

[7]ECF No. 9, pp. 404-413, 475, 486-546.

acetabulum." But on examination, Plaintiff had a normal gait and station and full range of motion in April 2012. Subsequent examinations also continued to show no abnormalities. Given this evidence, Plaintiff fails to show he was prejudiced. *Carey v. Apfel*, 230 F.3d. 131, 142 (5th Cir. 2000). Although the ALJ's residual functional assessment limits Plaintiff to only "occasional *left* lower extremity pedal/push/pull operations," he also found that Plaintiff should only occasionally balance, stoop, kneel, crouch, crawl, climb ramps/stairs, and should avoid working around hazardous machinery or at unprotected heights. Absent evidence that marginal spurring in his right hip produced exertional and postural limitations greater than these, Plaintiff fails to demonstrate how his substantial rights were affected by the ALJ's failure to address the marginal spurring in his right hip.[8]

Even if the Court were to find the ALJ erred as Plaintiff argues, the failure to make a severity finding at step two alone is not grounds for automatic reversal or remand. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis). After finding that Plaintiff had severe impairments at step two, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. In making this finding, the ALJ considered all of Plaintiff's medically determinable impairments and their limiting effects. *Graves v. Astrue*, No. 2:07 CV306 KS-MTP, 2008 WL 4093726

---

[8] ECF No. 9, pp. 61, 393-403, 486-529 (Emphases added).

(S.D. Miss. Aug. 27, 2008) (citing 20 C.F.R. §§ 404.1523 & 416.923).  Thus, any error at step two was harmless.

As his next point of error, Plaintiff argues the ALJ's residual functional capacity assessment lacks medical support because he did not obtain a consultative examination or a treating physician's opinion regarding Plaintiff's functional limitations.  In support, Plaintiff cites *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), for the proposition that the ALJ "has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  The *Ripley* court explained that although the absence of a medical source statement does not render the record incomplete, the ALJ should usually "request a medical source statement describing the types of work that the applicant is still capable of performing" to fulfill this duty.  *Id.*  That is what occurred here.  The ALJ did not reach a residual functional capacity assessment based on his lay interpretation of the medical evidence.  The ALJ assigned significant weight to the residual functional capacity assessment submitted by a state medical consultant who opined that Plaintiff had the exertional capacity to perform light work with occasional climbing of ramps/stairs.  *See e.g., Onishea v. Barnhart*, 116 F.App'x. 1 (5th Cir. 2004) (ALJ may rely on a state examiner's function-by-function assessment of a claimant's exertional limitations when determining residual functional capacity).

Plaintiff complains that the consultant's assessment was completed only 3 months after his application, and "well before the receipt of pertinent medical evidence" regarding his bilateral hip impairments and carpal tunnel syndrome.  However, none of

Plaintiff's treating or examining physicians opined that either condition would affect his ability to work.  The ALJ also assigned additional limitations based on these impairments.

To the extent Plaintiff contends the ALJ was required to obtain a consultative examination evaluating the effects of these conditions on his ability to work, the ALJ's duty to obtain a consultative examination is triggered when the evidence is insufficient to make an informed decision.  20 C.F.R. § 416.912; *see also Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).  The duty is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process.  *Brock*, 84 F.3d at 728; *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)*; Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  There must be insufficient evidence to make an informed determination, not a favorable one.  *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 805 (E.D. Tex. 2006).

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ, and there is substantial evidence to support the ALJ's residual functional capacity determination in this case.  20 C.F.R. § 404.1546 (c) (2010).  As the ALJ observed, Plaintiff's cardiologist released him to return to work following his coronary artery bypass with no restrictions in February 2012.  His cardiovascular surgeon similarly noted that Plaintiff's recovery was uneventful and he could return to full activity within a couple of months.  Notwithstanding, in assessing Plaintiff's residual functional capacity, the ALJ determined that Plaintiff should avoid concentrated exposure to

extreme temperatures due to his history of coronary artery disease.  And, although no medical source imposed restrictions based on Plaintiff's carpal tunnel syndrome, hip spurs, or other non-severe impairments, the ALJ clearly credited Plaintiff's subjective complaints in assigning limitations based on these conditions.  The ALJ's assessment restricts Plaintiff from working at unprotected heights or around hazardous machinery; from performing constant fine and gross manipulations with his upper extremities; and, limits him to only occasionally climbing, push/pull operations, and postural limitations.

Even if the ALJ erred as Plaintiff's argues, this Court may not reverse for failure to develop the record unless Plaintiff demonstrates that he "could and would have adduced evidence that might have altered the result."  *Carey*, 230 F.3d. at 142 (quoting *Kane,* 731 F.2d at 1220).  Plaintiff has made no such showing here.  Accordingly, his argument fails.

As his final point of error, Plaintiff claims the ALJ failed to incorporate all of his limitations into his residual functional capacity assessment, resulting in a defective hypothetical to the vocational expert and an erroneous finding at step five.  An ALJ's residual functional capacity assessment and corresponding hypothetical need only incorporate the limitations recognized by the ALJ.  *Bowling*, 36 F.3d at 436.  The ALJ presented a hypothetical to the vocational expert that inquired whether an individual with the claimant's residual functional capacity could perform jobs that exist in significant numbers in the national economy.  In response, the vocational expert testified that Plaintiff could perform work as a ticket-taker, ticket-seller, and fast-food worker.

Plaintiff's representative was also afforded an opportunity to correct any perceived deficiencies at the administrative hearing.  No remand is warranted on this issue.

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective

December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

     This the 4th day of February 2016.

                                                 /s/  Linda R. Anderson
                                       UNITED STATES MAGISTRATE JUDGE